Joseph KEDZIERSKI,
Plaintiff–Appellant,

v.

Michael KEDZIERSKI,
Defendant–Appellee.

No. 88–3410.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1990.

Decided April 12, 1990.

Eugene Steingold, Robert H. Rosenfeld, Rosenfeld & Steingold, Chicago, Ill., for plaintiff-appellant.

Sol Zyndorf, Zyndorf, Saum & Osterud, Toledo, Ohio, Colleen M. Minogue, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, WOOD, Jr., and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This is brother against brother quarrelling over their father's modest estate, but it is too late to let these two brothers fight it out in court, regardless of what the underlying merits may be.

This diversity case is set forth in a one-count complaint filed on April 18, 1988, by plaintiff Joseph Kedzierski, an Illinois citizen, against his brother, Michael Kedzierski, a citizen of Ohio. Plaintiff seeks an accounting of their father's estate. Their father, Frank Kedzierski, died intestate on December 1, 1963, leaving an estate of

unspecified value, but plaintiff in his affidavit opposing defendant's motion for summary judgment describes it as small. Plaintiff's page and a half complaint alleges only that the father's death in 1963 left the two brothers as his heirs, that the defendant brother took possession of all the estate, and that from time to time prior to 1989 the defendant made certain payments to plaintiff. The complaint also asserts that plaintiff occasionally made demands on his defendant brother for an accounting but to no avail. The defendant moved for summary judgment on the basis that the claim was governed by a five-year limitation period under applicable Illinois law and was therefore time barred. ILL. REV. STAT. ch. 110, ¶ 13–205.[1] Before plaintiff responded to defendant's motion, the district court entered summary judgment in defendant's favor based on the allegations in the plaintiff's complaint. Thereafter plaintiff moved the district court to vacate the entry of judgment in behalf of defendant and to reconsider the defendant's motion for summary judgment. Accompanying plaintiff's motion to vacate and reconsider was a statement in accordance with local rule 12(m)(2).[2]

In his motion plaintiff raised several defenses to the cause being time barred. First was the fact that defendant had made regular payments to plaintiff during the interim between 1963 and 1987. The final payment allegedly was for interest on a joint bank account in the names of both brothers. Plaintiff therefore argued that the statute of limitations did not begin to run until the payments stopped in 1987, at which time plaintiff first discovered defendant's wrongful acts. Second, plaintiff claimed that a fiduciary relationship was created when defendant took control of the assets with the "intent" to invest for the

benefit of both brothers. Plaintiff's statement filed in accordance with the local rule concedes that the defendant did not open a probate estate at the time of the father's death. Not mentioned in plaintiff's local rule statement, but attached to it as an exhibit, is an affidavit executed by the plaintiff that mentions for the first time that shortly after their father's death, plaintiff and defendant orally agreed that defendant would take over the father's estate and manage and invest the money for the mutual benefit of both brothers. That alleged oral agreement is also argued in appellant's brief, but it was not pleaded in the complaint nor directly alleged in plaintiff's motion to vacate the summary judgment. Plaintiff never sought to amend his complaint.

In *Leichtfeld v. Dornbaugh*, 339 Ill.App. 281, 89 N.E.2d 752 (1950), cited by the district court in support of its order, the appellate court held that a widow's action for an accounting against her deceased husband's father based on an alleged partnership between father and son was time barred when brought more than five years after the husband's death. *See also Bonney v. Stoughton*, 122 Ill. 536, 540, 13 N.E. 833 (1887); *Quayle v. Guild*, 91 Ill. 378, 383 (1878). The district court in the present case held that any of the defendant's transgressions described on the face of the complaint occurred at the time of the father's death in 1963 when the defendant allegedly took full charge of the estate with plaintiff's knowledge. This appeal followed.

▮   Plaintiff concedes that the five-year statute of limitations applies, but argues that the alleged fiduciary relationship and the interim payments over the years in accordance with the recently interposed

---

1. In relevant part, ¶ 13–205 states:
   [A]ctions on unwritten contracts, express or implied ... or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for shall be commenced within five years next after the cause of action accrued.
   ILL. REV. STAT. ch. 110, ¶ 13–205 (1987).

2. Local rule 12(m)(2) for the Northern District of Illinois provides in part that a party opposing a summary judgment motion should include in his response "a statement, consisting of short numbered paragraphs, of any additional facts which require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon."

oral agreement tolled the statute until the payments stopped in 1987. That explanation, however, was not pleaded in plaintiff's very brief complaint. On the face of the complaint it appears only that the defendant took charge of the estate, and thereafter made some payments to plaintiff. The nature of those payments, whether merely voluntary or in accordance with the later claimed oral agreement or for some other reason, is not apparent. The district judge properly ruled on what was before him in the complaint at the time. The allegations in the complaint described a twenty-five-year-old claim that was clearly time barred.

Plaintiff's statement filed in accordance with local rule 12(m)(2), which was filed after defendant's motion had been granted and first raised the claimed oral agreement with its related interim payments, cannot substitute for his complaint. The district court did not consider plaintiff's late efforts outside his complaint sufficient to raise a defense to the statute of limitations, and neither do we. To avoid this result plaintiff argues that the discovery rule should apply to postpone the running of the statute of limitations. The Illinois Supreme Court in *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 413–16, 58 Ill.Dec. 725, 728–30, 430 N.E.2d 976, 979–81 (1982), held that the five-year statute of limitations begins to run only when a person knows or reasonably should have known of the injury and knows or should have known that the injury was wrongfully caused. No one quarrels with that statement of the rule. The supreme court emphasized, however, that "[a]t some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Id.* at 416, 58 Ill.Dec. at 729–30, 430 N.E.2d at 980–81.

■ Determining the point under the discovery rule at which the running of the limitations period commences is a question for the trier of fact, unless the parties do not dispute the facts and only one conclusion may be drawn from them. *Id.; see also Witherell v. Weimer*, 85 Ill.2d 146, 156, 52 Ill.Dec. 6, 11, 421 N.E.2d 869, 874 (1981); *Nolan v. Johns–Manville Asbestos*, 85 Ill.2d 161, 171, 52 Ill.Dec. 1, 5–6, 421 N.E.2d 864, 868–69 (1981). In the present case, if the material facts concerning the point at which a reasonable person should have known he was wrongfully injured were in dispute, summary judgment could not be used to resolve the case as a matter of law. *Knox* involved a new roof installation that quickly began to leak, and was from time to time unsuccessfully repaired until the roof finally had to be replaced. It was not determined by the Supreme Court of Illinois exactly when, considering the sequence of those particular events, the statute began to run. That was left to the trier of fact, but the court suggested that the first leak may have been enough to trigger the statute. *See also Tucek v. Grant*, 129 Ill.App.3d 236, 84 Ill.Dec. 603, 472 N.E.2d 563 (1984). The complaint in that case, however, did not provide the answer on its face as it does in the present case. The undisputed *material* facts of this case clearly indicate that plaintiff had sufficient information concerning his alleged injury and its cause soon after his father's death to put him on notice that he should inquire into whether any actionable conduct was involved. Instead, plaintiff tarried for twenty-five years before filing this lawsuit.

■ Limitation statutes may at times, as plaintiff argues, work a harsh result, but there is nevertheless need for them.[3] In the present case, the limitations period for the claim asserted in plaintiff's complaint

---

**3.** Indeed, limitations statutes merely recognize the general understanding that ancient grudges are the most destructive, self-consuming, and ill-founded. Providing a limited period of time in which to remedy a wrong also prompts plaintiffs to seek to resolve their disputes at a time close to their injury and enhances the likelihood that a court will arrive at a just result. Samuel Johnson described "law" as "the last result of human wisdom acting upon human experience for the benefit of the public." 1 Johnsonian Miscellanies 233 (G. Hill ed. 1897). Johnson's observation certainly applies to statutes of limitations. Any undue hardship in their application is ameliorated by tolling provisions that do not apply in this case.

began to run in 1963 when the defendant brother allegedly gathered the father's estate to himself. That the defendant for his own unknown reasons thereafter from time to time shared some proceeds with plaintiff does not alone postpone the running of the statute of limitations. It is clear, relying on plaintiff's own complaint, when the alleged initial wrong occurred. The subsequent assertions regarding an oral agreement raised in plaintiff's local rule 12(m)(2) statement and in his brief filed in this court cannot substitute for missing allegations in the complaint. If these additional factors were to be relied on by plaintiff they should have been pled in the complaint, not just claimed and argued about in other papers. None of the allegations in the complaint even hinted at the existence of an oral agreement between the brothers that was later breached in violation of a fiduciary duty when no further payments were received and no accounting was rendered.[4] We therefore need not determine what effect those unmade allegations would have made on the running of the statute of limitations. It is now too late for this court to attempt to unravel this old family matter regardless of which brother may be right or wrong. As to which brother would otherwise have prevailed we do not know.[5] Each party shall bear his own costs.

AFFIRMED.

---

4. There is some showing in the record that at least one account that the defendant brother set up was in the joint names of both brothers. If that be so then why plaintiff himself did not draw on that account we are not informed.

5. There is a reference in the record that at least the defendant brother is now over 80 years of age, but it is not too late for two reasonable brothers to satisfactorily resolve this quarrel among themselves and bring peace again to the family.